No. 72–1350.  Meisel et al. v. United States.  C. A. 9th Cir.  Certiorari denied.

Mr. Justice Douglas, dissenting.

Electronic surveillance has increasingly infected criminal trials.  My hearing in the Pentagon Papers case last summer (Russo v. Byrne, 409 U. S. 1219), was the beginning of vast disclosures which showed how seriously that trial had in fact been infected.  See also 409 U. S. 1013. The indictments involved in it were indeed later dismissed, in part on the grounds that the prosecution failed to disclose the existence and results of wiretaps.

It has become painfully apparent that wiretapping and electronic surveillance are a commonplace tool of those who pursue prosecutions with zeal that knows no bounds, not even the clear mandate of our Constitution or laws.  The Nation early eschewed this Machiavellian philosophy.

> "The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness.  They recognized the significance of man's spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure and satisfactions of life are to be found in material things.  They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations.  They conferred, as against the Government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men.  To protect that right, every unjustifiable

intrusion by the Government upon the privacy of the individual, whatever the means employed, must be deemed a violation of the Fourth Amendment." *Olmstead* v. *United States,* 277 U. S. 438, 478 (Brandeis, J., dissenting).

This case presents a more related facet of the problem than *Russo* v. *Byrne, supra.* Here we are concerned with witnesses called to testify before the grand jury. See *Tierney* v. *United States,* 410 U. S. 914 (DOUGLAS, J., dissenting). This particular grand jury was investigating firearms transactions between certain Irish-Americans and the Irish Republican Army. The center of attention apparently was one Charles Farrell Malone, who, subsequent to the proceedings below, pleaded guilty to a federal firearms offense. Petitioners, one a friend of Malone's and the other a babysitter for his seven children, were subpoenaed to appear before the grand jury on October 25 and 26, 1972. Both appeared but refused to testify. Approximately one month later, the Government advised petitioners' counsel that it would apply for an order granting petitioners testimonial immunity, see 18 U. S. C. § 6003, and in the event immunity was granted and petitioners still refused to testify, it would seek immediately to have petitioners held in contempt.

On November 28 petitioners were granted immunity, and the same morning they were brought before the grand jury. They refused to testify on the grounds, *inter alia,* that the questions propounded to them were the product of illegal electronic surveillance of themselves and *their attorney.*[1] The contempt hearing took place

---

[1] Petitioners' attorney, who also represented Malone, who had been indicted before petitioners were granted immunity, had withdrawn as counsel that morning in order to avoid any conflict of interest. It is clear to me that we must treat that attorney as petitioners' counsel in considering their constitutional rights before the grand jury.

at 2 o'clock that afternoon. Petitioners again asserted that they had been subjected to illegal electronic surveillance, and they submitted *an affidavit of their attorney claiming that his telephones had been wiretapped.* The Government attorney filed affidavits disclaiming any surveillance upon petitioners or their premises. The affiant also stated that he knew "the identity of all the sources of information upon which the questioning of [petitioners] is based and no questions asked are the result of electronic surveillance . . . ." *The Government did not specifically respond to the allegation that the attorney had been subjected to surveillance.*

Based upon these affidavits and oral argument, the District Court held petitioners in civil contempt. The District Judge refused to hold a hearing regarding the claims of electronic surveillance and wiretapping or to require the Government to search its files to assure the non-existence of electronic surveillance on their attorney. Bail was denied, and petitioners were ordered to jail for the life of the grand jury, but not to exceed 18 months. The Court of Appeals, however, granted bail pending appeal. On December 29, 1972, the Court of Appeals affirmed the contempt adjudications and revoked bail. 472 F. 2d 548. I ordered that petitioners be released on their own recognizance pending the timely filing and disposition of a petition for a writ of certiorari. I now would grant their petition and set this case for oral argument.

The sole ground for denying a hearing was the Government disclaimer that petitioners themselves had been subject to electronic surveillance or that any questions to be asked were the result of surveillance of third parties. In *Alderman* v. *United States,* 394 U. S. 165, we held that when the results of electronic surveillance are arguably relevant to the defense, the records must be

submitted for adversary hearing before the trial judge. "Adversary proceedings are a major aspect of our system of criminal justice. Their superiority as a means for attaining justice in a given case is nowhere more evident than in those cases, such as the ones at bar . . . ." *Id.*, at 183. I find the failure to afford a hearing especially troubling in this case. The Government's affiant, an official of the Internal Security Division of the Justice Department, stated that he had "caused an inquiry to be made" among certain listed federal agencies and this inquiry had not disclosed that petitioners had been subject to any illegal electronic surveillance. Even though the subject of the grand jury investigation was firearms transactions with the Irish Republican Army, the affiant had not checked with military intelligence agencies. We have learned that the results of illegal surveillance often are secreted away, whether for reasons of national security or for fear of public disclosure. For that reason, no stone should remain unturned. Although the District Judge himself was concerned with the failure to consult with these agencies, he nevertheless denied petitioners an evidentiary hearing either on the adequacy of the Government's denial or the actual existence of surveillance of petitioners by more federal agencies. Moreover, the *Government totally failed to respond to the claim that petitioners' attorney had been subjected to illegal surveillance.*[2]

We should no longer tolerate procedures which allow the prosecution to pyramid the secrecy of its clandestine

---

[2] In *Gelbard* v. *United States*, 408 U. S. 41, we held that a grand jury witness has standing to challenge questions propounded to him on the ground that they are derived from illegal electronic surveillance. The interrelationship of the Fourth, Fifth, and Sixth Amendments in this area requires, in my mind, that this rule extend to surveillance of a witness' attorney. See *Tierney* v. *United States*, 410 U. S. 914 (DOUGLAS, J., dissenting).

activities.[3]  It is by no means an easy task to uncover the intricacies and interrelationships of the Executive's ever-expanding security mechanism, but we certainly cannot even start without the rudiments of due process.

---

[3] As we said in *Alderman* v. *United States,* 394 U. S. 165:

"An apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller or the individual on the other end of a telephone, or even the manner of speaking or using words may have special significance to one who knows the more intimate facts of an accused's life.  And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances.  Unavoidably, this is a matter of judgment, but in our view the task is too complex, and the margin for error too great, to rely wholly on the *in camera* judgment of the trial court to identify those records which might have contributed to the Government's case."  *Id.,* at 182.